**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY T.,<br><br>              Plaintiff,<br><br>       v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>              Defendant. | No. 5:25-cv-02365-AYP<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Anthony T.[1] seeks review of the Commissioner's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  (Dkt. No. 1.)  The parties consented to proceed before the magistrate judge and thereafter filed briefs addressing the disputed issues. (Dkt. Nos.  9, 12, 15, 17, 19.)  The Court took the matter under submission without oral argument.  For the reasons discussed below, the Court finds that the Commissioner's decision should be affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I.    BACKGROUND

On April 21, 2020, Plaintiff filed an application for DIB, alleging disability beginning January 20, 2013, due to autoimmune hemolytic anemia. (Administrative Record ("AR") 16.)  The application was denied initially and upon reconsideration.  (AR 16, 115, 124.)  Plaintiff, who was then represented by counsel, appeared and testified at a hearing before an administrative law judge ("ALJ") on July 29, 2021.  (AR 65-79.)  A vocational expert ("VE") also testified.  (AR 79-80.)

On August 19, 2021, the ALJ issued a decision denying benefits.  (AR 3586-3605.)  At the outset, the ALJ noted that Plaintiff had previously received an unfavorable DIB decision dated April 20, 2018, which became final after the Appeals Council denied review.  (AR 3589-90.)  The ALJ therefore considered whether Plaintiff had demonstrated "changed circumstances" sufficient to rebut the presumption of continuing nondisability under *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  Although Plaintiff testified that his anemia had worsened, the ALJ found no new and material evidence establishing changed circumstances.  (AR 3595.)  Accordingly, the ALJ concluded that Plaintiff had not rebutted the *Chavez* presumption, adopted the findings from the prior April 20, 2018 decision, and found that Plaintiff was not disabled during the period from April 21, 2018, through September 30, 2018, the date last insured.  (AR 3596.)

Plaintiff thereafter filed an action in this Court.  (AR 3530-61.)  The Court found that the ALJ had failed to adequately evaluate Plaintiff's testimony that changes in his treatment regimen resulted in increased fatigue and other treatment-related side effects, which could constitute changed circumstances sufficient to rebut the presumption of continuing nondisability under *Chavez*. The Court therefore reversed and remanded for further administrative proceedings.  (AR 3562-81.)

Following remand, a different ALJ held a second administrative hearing on November 15, 2024, at which Plaintiff appeared pro se and testified. (AR 3498-3529.) On March 21, 2025, the ALJ issued another unfavorable decision. (AR 3474-97.) In that decision, the ALJ declined to apply the *Chavez* presumption and instead evaluated Plaintiff's claim from the alleged onset date through the date last insured. (AR 3477-78.)

Following the five-step sequential evaluation process applicable to disability determinations,[2] the ALJ found that Plaintiff had one "severe" impairment: anemia. (AR 3480.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he could have no more than moderate exposure to temperature extremes, no interaction with the general public, and only occasional interactions with others. (AR 3481.) At step four, the ALJ found that Plaintiff had no past relevant work. (AR 3484.) At step five, relying on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including marker, routing clerk, and assembler. (AR 3485.) As a result, the ALJ concluded that Plaintiff was not disabled from January 20, 2013, the alleged onset date, through September 30, 2018, the date last insured. (AR 3486.)

On April 29, 2025, Plaintiff submitted written exceptions to the ALJ's decision. (AR 3468.) The Appeals Council considered Plaintiff's written exceptions but declined to assume jurisdiction. (AR 3468-73.) Plaintiff, proceeding pro se, then filed this action.

---

[2] The ALJ determines disability using a five-step sequential evaluation process, which examines whether (1) the claimant engaged in substantial gainful activity, (2) the claimant has a severe impairment, (3) the impairment meets or equals a listed impairment, (4) the claimant is able to do past relevant work, and (5) the claimant is able to do any other work. 20 C.F.R. § 404.1520(a)(4).

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). "Substantial evidence" is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). In determining whether substantial evidence supports the ALJ's findings, the Court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021). When the evidence can rationally be interpreted in more than one way, the Court must uphold the Commissioner's decision. *Id.*; *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016).

## III.   DISCUSSION

Plaintiff appears to argue that: (1) the ALJ failed to comply with the Court's remand order and improperly discounted his allegations regarding fatigue and other treatment-related side effects; (2) the ALJ improperly evaluated the medical opinion evidence; and (3) the ALJ's step-five finding is unsupported by substantial evidence because the RFC failed to account for limitations arising from Plaintiff's treatment regimen.[3]  (Dkt. No. 15 at 3-20.) As discussed below, the Court finds that none of these arguments warrants remand.

### A. The ALJ Properly Evaluated Plaintiff's Subjective Symptom Allegations

Plaintiff contends that the ALJ failed to give legally sufficient reasons for

---

[3] Because Plaintiff is proceeding pro se, the Court construes his filing liberally. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

rejecting his subjective symptom allegations.[4]

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms, and there is no affirmative evidence of malingering, an ALJ may reject the claimant's testimony regarding the severity of those symptoms only by providing specific, clear and convincing reasons supported by substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). General findings are insufficient; rather, the ALJ must specifically identify the testimony being discounted and explain what evidence undermines it. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015). Although an ALJ need not discuss every piece of evidence or draft a "line-by-line exegesis" of the record, the Court must be able to follow the ALJ's reasoning and determine that the claimant's testimony was not arbitrarily discredited. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (clear and convincing standard requires ALJ to "show his work").

Here, Plaintiff alleged disability primarily due to autoimmune hemolytic anemia. (AR 71, 3512.) He testified that he received Rituximab infusions when his hemoglobin levels declined, following relapses that occurred approximately every 12 to 18 months. (AR 3520-22.) Plaintiff stated that, as his hemoglobin levels dropped, he would experience increasing symptoms, including profound fatigue, concentration problems, and difficulty functioning. (AR 73, 75, 77-78,

---

[4] To the extent Plaintiff contends that the ALJ failed to comply with the Court's remand order, that argument lacks merit. The remand order directed the ALJ to consider whether Plaintiff's testimony regarding his changed treatment regimen and alleged increased side effects established changed circumstances sufficient to rebut the *Chavez* presumption. (AR 3562-81.) On remand, the ALJ found changed circumstances, declined to apply *Chavez*, and evaluated Plaintiff's claim through the date last insured. (AR 3477-78.) Thus, the ALJ complied with the remand order.

3513-14.)  He testified that these symptoms worsened in the weeks preceding treatment and that he then required additional recovery time following the infusions.  (AR 75-76, 3513-14.)  Plaintiff further testified that his treatment regimen later changed to maintenance Rituximab infusions approximately every two months.  (AR 72, 74, 3518.)  According to Plaintiff, this more frequent treatment schedule caused increased side effects, including fatigue, headaches, dizziness, and a lowered immune system, and he developed shingles.  (AR 77, 3518-19.)  Plaintiff maintained that these treatment-related side effects and recovery periods prevented him from sustaining full-time employment.  (AR 3522-23.)

In the decision, the ALJ discounted Plaintiff's subjective symptom testimony based on the medical and treatment evidence of record and Plaintiff's contemporaneous reports to medical providers.  (AR 3481-84.)  As discussed below, these were specific, clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom allegations. *See Treichler*, 775 F.3d at 1102.

First, the ALJ cited the medical and treatment evidence.  (AR 3481-84.)  The objective medical evidence and the effectiveness of treatment are relevant considerations in evaluating the intensity and persistence of a claimant's symptoms.  *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *5-8; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Here, the treatment records reflect that Plaintiff experienced periodic relapses of his autoimmune hemolytic anemia.  (AR 3462.)  His condition generally responded well to Rituximab therapy, and he did not require blood transfusions.  (AR 959.)  Plaintiff underwent two eight-infusion courses of Rituximab therapy, first from December 2014 through January 2015 and again from July through August 2016.  (AR 960.)  Treatment records later noted that Plaintiff experienced periods of remission lasting approximately 12 to 18 months following each

6

course of treatment.  (AR 959-60.)

After Plaintiff experienced additional relapses in late 2017 and again in spring 2018, his medical providers elected to begin maintenance Rituximab therapy.  (AR 2593, 2601.)  The treating hematologist described this regimen as a "maintenance/preventative" dosing schedule intended to minimize Plaintiff's long-term Rituximab exposure.  (AR 2593, 3088.)  Subsequent treatment records documented stable or normal blood counts, ECOG performance scores of 0,[5] and a favorable response to treatment. (AR 959, 764-65, 769-70, 774, 778-80.) Indeed, after maintenance therapy was initiated, later treatment records reflected stable hemoglobin levels, continued remission, and no indication that Rituximab needed to be restarted after it was eventually placed on hold.  (AR 895-96, 2539, 2559.)  Moreover, although Plaintiff developed shingles in 2018, the record does not document recurrent infections, infection-related hospitalizations, or other objective findings that would support Plaintiff's claim that treatment-related immune suppression prevented him from working.  (AR 704-05, 708, 712.)  Based on the foregoing, the ALJ reasonably concluded that the medical and treatment evidence did not support Plaintiff's allegations of disabling symptoms.[6]

Second, the ALJ noted that Plaintiff's allegations were inconsistent with his contemporaneous reports to medical providers.  (AR 3481-84.)  An ALJ may consider the consistency of a claimant's own statements when evaluating the

---

[5] The Eastern Cooperative Oncology Group ("ECOG") performance scale is a measure of a patient's functional status.  An ECOG score of 0 indicates that the patient is fully active and able to carry on all pre-disease activities without restriction.  (AR 1269.)

[6] To the extent Plaintiff argues that the ALJ improperly relied on evidence predating the relevant period, that argument lacks merit.  The ALJ appropriately considered Plaintiff's longitudinal treatment history to evaluate the course of his autoimmune hemolytic anemia, the effectiveness of treatment, and the consistency of his allegations during the relevant period.

intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2017 WL 5180304, at \*5 ("we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances"). Here, Plaintiff testified that he experienced debilitating fatigue, headaches, dizziness, prolonged recovery periods, and significant immune suppression following Rituximab therapy. However, following treatment in 2015, Plaintiff repeatedly told his providers that he had no symptoms, good energy, no new complaints, and generally felt well. (AR 1264, 1423, 1917, 1923, 1930, 2344, 2333, 2341, 2355). During a 2016 relapse and subsequent treatment, Plaintiff stated that he was "feeling pretty good" and experienced only occasional headaches. (AR 1857.) Thereafter, while in remission, treatment notes consistently reflected good energy levels, no new complaints, and no symptoms related to infection. (AR 705, 711, 715, 727, 738-39, 742, 2217.) Similarly, after transitioning to maintenance Rituximab therapy, Plaintiff complained only of occasional fatigue and denied any significant side effects. (AR 767, 769, 774, 778, 959.) The ALJ reasonably found that these contemporaneous statements to his medical providers were inconsistent with Plaintiff's allegations of disabling symptoms and treatment-related limitations.[7]

In sum, the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and remand is not

---

[7] Plaintiff argues that the ALJ improperly relied on Plaintiff's reported daily activities in evaluating his subjective symptom allegations. (Dkt. No. 15 at 11-12.) But even assuming that the ALJ erred in this respect, remand is unwarranted because the ALJ provided other specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

warranted on this issue.

**B. The ALJ Properly Evaluated the Medical Opinion Evidence**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence. (Dkt. No. 15 at 9, 15-17.) This argument lacks merit. For claims filed on or after March 27, 2017, an ALJ evaluates the persuasiveness of medical opinions based primarily on their supportability and consistency. *See Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). The ALJ's evaluation of the medical opinion evidence must be supported by substantial evidence. *Id.* at 792.

First, Plaintiff appears to challenge the ALJ's evaluation of the medical source statement from his treating physician, Mark Carmichael, M.D. (Dkt. No. 15 at 9, 15.) This statement, however, did not identify any specific functional limitations. (AR 3462-66.) Dr. Carmichael described Plaintiff's prognosis as good, responded "N/A" when asked to identify limitations, and identified no additional limitations. (AR 3463-65.) The ALJ reasonably found that this opinion did not support greater work-related limitations beyond those reflected in the RFC. (AR 3483.)

Second, Plaintiff contends that the ALJ failed to account for the opinion of Restituto Tibayan, M.D., his treating oncologist. (Dkt. No. 15 at 15-17.) Dr. Tibayan's brief letter likewise did not identify any specific functional limitations arising from Plaintiff's impairments. Rather, Dr. Tibayan generally referenced fatigue, headaches, and COVID-related restrictions. (AR 2951.) Accordingly, the letter provided limited insight into Plaintiff's ability to perform work-related activities during the relevant period.

Thus, Plaintiff has not shown that the ALJ erred in evaluating the medical opinion evidence.

**C. Substantial Evidence Supports the ALJ's Step-Five Finding**

Plaintiff also challenges the ALJ's step-five finding, arguing that the RFC

should have included additional limitations arising from his maintenance Rituximab treatment, including the need to isolate from others and miss several days of work every six to eight weeks. Because those limitations were not included in the RFC, Plaintiff likewise contends that the hypothetical question posed to the VE was incomplete. (Dkt. No. 15 at 12-15.) This argument lacks merit.

Plaintiff's claim relies primarily on his own testimony regarding the severity of his treatment-related symptoms and recovery periods. However, as discussed above, the ALJ permissibly discounted Plaintiff's subjective symptom allegations based on the medical and treatment evidence and Plaintiff's contemporaneous reports to medical providers. Accordingly, the ALJ was not required to include in the RFC, or the corresponding hypothetical question to the VE, limitations derived solely from those allegations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005) (the ALJ need include only those "limitations that the ALJ found credible and supported by the substantial evidence in the record"). Nor does the record otherwise support the limitations Plaintiff proposes. No medical source opined that Plaintiff would require periodic absences from work, isolation from coworkers, or other restrictions beyond those incorporated into the RFC. To the contrary, treatment records documented stable blood counts, remission, ECOG performance scores of 0, and only occasional fatigue during maintenance therapy. Because the hypothetical question posed to the VE included all of the limitations that the ALJ reasonably found supported by the record, the ALJ was entitled to rely on the VE's testimony at step five. *See Bayliss*, 427 F.3d at 1216-17. Thus, remand is not warranted.

**IV.     ORDER**

For the foregoing reasons, IT IS ORDERED that the decision of the

Commissioner is affirmed.

IT IS SO ORDERED.


DATED:   July 6, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

11